## SUPREME COURT.

In the Matter of the claim of JOHN SCHREYER, executor, appellant, agt. MARY FRANCIS HOLBORROW and another, administrators, &c., respondents.

*Reference under statute providing for the hearing and determining of claims against the estate of a deceased party — How and when motion may be made to set aside report — Executor — Cannot assign claims owing to himself individually to himself as executor.*

A motion to set aside the report of a referee, appointed under the statute providing for the hearing and determining of claims against the estate of a deceased party, is not too late though made after the entry of judgment upon such report.

The motion must first be made at a special term.

An executor cannot transfer claims owing to himself individually by executing a formal assignment of them to himself, as executor, so as to entitle him to enforce them against the estate of the deceased intestate in his fee as executor.

*First Department, General Term, January,* 1882.

*Before* DAVIS, *P. J.,* BRADY *and* DANIELS, *JJ.*

APPEAL from an order denying motion made upon a case to set aside the report of a referee and for a new trial.

*Conlan & McCrea*, for appellant.

*J. W. Hawes*, for respondents.

DANIELS, *J.*— The reference was made under the statute providing for the hearing and determining of claims against the estate of a deceased party. After hearing the evidence, a report was made rejecting the claims, and judgment has since been entered upon such report.

It has been objected that the motion to set aside, which was made after the judgment, was too late. But the practice as it now has become settled is against the validity of such an objection. Beyond that the application was heard under the practical sanction of the general term, for when the case was before it on a preceding occasion, the appeal on the application of the respondent was then dismissed, because the motion had not been first heard at the special term, and without prejudice to the right still to make such a motion. It was to comply with the rule of practice requiring the motion to be first made there in an application of this nature, that the motion was made which resulted in the order from which the appeal has been taken. And the court was not deprived of the power to hear it simply because a judgment had in form been entered.

It has also been claimed that the case was not served in time, but as it was in fact settled and made the foundation of the motion before the special term, it is too late now for the respondent to derive any advantage from that objection. The case must consequently be regarded as regularly before this court for the determination of the merits of the controversy.

All the claims, except one, which were made the subject of investigation at the trial, were owing from Holborrow, the deceased intestate, to Schreyer individually. For the purpose

of placing them in a condition in which they might be joined with another claim held by Schreyer in his representative capacity, he executed a formal assignment of the individual claims to himself as executor. And upon the basis of that assignment he endeavored to enforce them against the estate of the deceased intestate, in his favor as executor. The case of *Scranton* agt. *Farmers', &c., Bank of Rochester* (24 *N. Y.*, 424), has been relied upon as an authority sustaining such an assignment. But no such legal effect can properly be attributed to it. The transaction there had resulted in an actual appropriation of the money derived from the claim to the estate, and for that reason it was sustained. It was held that the referee had not decided that the assignment by the plaintiff to himself as executor transferred the money secured by the policy to the estate, and that it was not necessary that he should have so decided.

This was the doctrine of the prevailing opinion, and it is evident from it that an assignment of this nature was not intended to be sustained by the decision. The dissenting opinion of DENIO, J., was emphatic that the assignment was legally inoperative.

Upon that subject he stated that the paper which the executor, as an individual, had made and signed, and then kept in his own possession, was of no legal force (*Id.*, 429). And that result seems to follow from the circumstances that the person executing such a paper and the individual receiving it are one and the same party, incapable of contracting with or transferring interests from himself as an individual to himself as an executor. Because of that inability no title was transferred to Schreyer, as executor, by the assignment, which he himself executed individually, and the claims intended to be affected by it were therefore properly rejected by the referee. But a further claim was presented and made a subject of the reference, which had accrued to the testatrix in her lifetime, for the rent of the second floor and basement of 355 West Forty-second street. This had become vested in

the executor in his representative capacity, and could properly be made the subject of such a reference. But in his report the referee also rejected this demand as not sufficiently established by the proof to authorize a recovery upon it.

The evidence given upon the hearing directly tended, without contradiction, to establish the fact that this property belonged to the testatrix, and it was shown to have been occupied by the intestate Holborrow, with his family, from some time in the spring of 1876, until November, in which month Holborrow died.

The agreement for the letting of this portion of the premises was made by the executor, as the husband and agent of his wife, with Holborrow, the intestate, and it was proved by the witness Cains, who was not interested in the controversy. He stated that he was present at a conversation, in the spring of 1876, between Holborrow and Schreyer in front of the premises 355 West Forty-second street; that these two persons stood in front of the building talking together at the time, and Schreyer addressing the witness asked him why Holborrow should not take the first floor of that building from him at thirty-five dollars per month because he was collecting rent for him; that it was convenient for his business and the rent was ten dollars less than for anyone else. The witness added that Holborrow said it was more rent than he wanted to pay. But finally he agreed to rent the same for one year, and without knowing whether the agreement was ever carried out he testified that Holborrow moved in; that he considered it a conditional agreement because Schreyer agreed to make alterations and repairs.

There is nothing in the case subjecting the statements of this witness to discredit or suspicion in any respect whatever, and for that reason it was the duty of the referee to accept his evidence as truthful (*Elwood* agt. *Western Union Tel. Co.*, 45 *N. Y.*, 549, 553). That was sufficient to prove the letting of the premises and their occupancy by Holborrow and his family, especially as it was followed by the further uncon-

tested evidence of Schreyer that this occupancy continued until the death of Holborrow in November following. As the case was presented there was no contradiction of any of these statements, and nothing appeared which warranted the conclusion that they were not truthful and reliable. Even if the letting was, as Cains stated it to be, conditional upon Schreyer's obligation to make alterations and repairs, it may well be presumed from the continuance of the tenancy itself, in the absence of all testimony to the contrary, that this obligation was properly performed. And that so far completed the case in favor of the claimant as to entitle him to a recovery for the rent accruing on account of this occupancy. It was not necessary that he should establish the further fact that the rent itself had not been paid. If payment had been made that was a fact to be proved in exoneration of the estate of the intestate (*Dayton* agt. *Johnson*, 69 *N. Y.*, 419). Upon this item of the claims presented upon the hearing the case of the claimant was made out and the report of the referee, by which it was finally rejected, was unwarranted ; and to that extent, consequently, the order which has been made should be reversed and a new trial directed before another referee. But as the appellant has legally failed upon the other claims presented by him the reversal will be without costs.

DAVIS and BRADY, JJ., concurred.